# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

_____
:
PAULA M. CAMPBELL,                          :
:
      Plaintiff,                              :
:    Civil No. 10-710 (RBK/AMD)
    v.                                              :
:    **OPINION**
SUSSEX COUNTY FEDERAL CREDIT    :
UNION,                                          :
:
      Defendant.                          :
_____:

**KUGLER**, United States District Judge:

      Plaintiff Paula M. Campbell claims that Defendant Sussex County Federal Credit Union improperly denied her benefits under an employee welfare benefits plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA"). Plaintiff asserts claims under ERISA and a common law breach of contract claim. Presently before the Court is Defendant's motion to dismiss for failure to state a claim, or, in the alternative, for summary judgment. Because the Court's subject-matter jurisdiction is predicated solely on Plaintiff's ERISA claims, and because it is unclear whether ERISA governs the benefits plan at issue, the Court denies Defendant's motion without prejudice and orders Plaintiff to show cause within thirty days why this Court has subject-matter jurisdiction over her claims.

**I.    BACKGROUND**

      Plaintiff began working for Diamond State Federal Credit Union ("Diamond") in 1983. She became the president of Diamond in 1998. In January 2006, Diamond's Board of Directors agreed to give her a "supplemental retirement benefits" package that included Diamond's

1

promise to provide Plaintiff with health insurance at its sole expense until Plaintiff's death by enrolling Plaintiff in Diamond's employee health insurance plan. (Compl. ¶¶ 4, 10). Diamond's Board of Directors adopted the package to "reward Plaintiff for her loyal and continuous service to the Company." (Compl. ¶ 10). Plaintiff characterizes the package as an ERISA-governed "welfare benefit plan" and alleges that Defendant is the administrator and underwriter of the plan. (Compl. ¶ 3). Neither party submitted a copy of the "plan" to the Court.

Beginning in May 2006, Pam Fluette, Defendant's Chief Executive Officer, began to recruit Plaintiff to take a position with Defendant. Plaintiff initially refused, but she told Ms. Fluette that pursuant to her agreement with Diamond, Diamond was obligated to provide her with health insurance for the remainder of her life. Ms. Fluette told Plaintiff that she could negotiate a higher salary with Defendant because Defendant would not have to pay for her health insurance. Eventually, in July 2007, Ms. Fluette offered Plaintiff the position of Vice President of Business Development and Marketing with Defendant. Plaintiff accepted the position and retired from her position as president of Diamond. When Plaintiff announced her retirement, Diamond offered Plaintiff a position on its Board of Directors, which Plaintiff accepted.

Plaintiff began working for Defendant in November 2007. While working for Defendant, Diamond continued to provide Plaintiff with free health insurance by enrolling her in its employee health insurance plan. In early 2008, Plaintiff learned of rumors that Defendant was seeking to acquire Diamond. Plaintiff spoke with the attorney who drafted the supplemental retirement package about whether the package required Defendant to continue to provide her with health insurance if it acquired Diamond. The attorney told Plaintiff that, pursuant to the package, Defendant would be required to continue Plaintiff's health insurance. Ms. Fluette also told Plaintiff that Defendant would be required to honor the package if it acquired Diamond.

In November 2008, Diamond's Board of Directors proposed a merger with Defendant. The proposal stated that Diamond would transfer all of its assets and liabilities to Defendant as the surviving credit union. The merger occurred on March 31, 2009. After the merger, Ms. Fluette again told Plaintiff that Defendant would honor the package, and Defendant did in fact pay for Plaintiff's health insurance from May 1, 2009 through November 2009.

On October 7, 2009, Defendant terminated Plaintiff's employment. The supplemental retirement package required Defendant to continue Plaintiff's health insurance notwithstanding her termination. However, on October 19, 2009, Plaintiff received a COBRA notification from Defendant stating that if she wished to continue her health insurance coverage, she was required to submit payment for her premiums within 60 days from the date of her termination. On October 30, 2009, Plaintiff wrote to Defendant requesting confirmation that Defendant would continue to pay her health insurance premiums. Defendant did not immediately respond to Plaintiff's request, and, because Plaintiff could not afford a lapse in coverage, Plaintiff made the required COBRA payment.

On November 6, 2009, Plaintiff received a letter from Defendant stating that Defendant would not continue to pay for Plaintiff's health insurance. The letter did not address Defendant's obligations under the package. Plaintiff responded with another request that Defendant pay her health insurance premiums. On November 16, 2009, Plaintiff received notice that her health insurance was cancelled effective November 6, 2009. On December 18, 2009, Plaintiff's counsel sent a letter to Defendant stating that it was in breach of its duties and obligations under the package. Defendant did not respond to Plaintiff's letter.

Plaintiff filed the Complaint on August 8, 2010. The Complaint asserts a claim for denial of benefits under ERISA (Count I), breach of fiduciary duty under ERISA (Count II), and breach

of contract (Count III). Plaintiff asserts that this Court has subject matter jurisdiction based on ERSIA's jurisdictional provision, 29 U.S.C. § 1132(e), and general federal-question jurisdiction under 28 U.S.C. § 1331. Plaintiff does not assert any basis for diversity jurisdiction under 28 U.S.C. § 1332.[1] Plaintiff's asserts supplemental jurisdiction over her state law contract claim.

Defendant did not answer but made a timely motion to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56. Defendant argues that Plaintiff's ERISA claims are barred by a one-year statute of limitations, that ERISA does not create an individual cause of action for breach of fiduciary duty, and that Plaintiff's breach of contract claim is preempted by ERISA.

## II. LEGAL STANDARD

District courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (U.S. 2006). "[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on [its] own." Id. Because the lack of jurisdiction itself precludes the court from asserting judicial power, a court may take no further action in a matter once it determines that it lacks jurisdiction. See First Am. Nat'l Bank v. Straight Creek Processing Co., 756 F. Supp. 945, 946 (E.D. Va. 1991) (where diversity of parties is incomplete, court has no jurisdiction to consider plaintiff's motion to dismiss non-diverse defendants; rather, court must dismiss action for lack of jurisdiction). Thus, jurisdiction is a threshold issue that must be resolved before the court can take any further action in the case. Frame v. Lowe, No. 09-2673, 2010 U.S. Dist. LEXIS 10494, at *12-13 (D.N.J. Feb.

---

[1] Plaintiff alleges that she is a "citizen and resident of the State of Maryland." (Comp. ¶ 3). She alleges that Defendant is a "credit union that is a cooperative financial institution, owned and operated by its members" that "can be served at 1941 Bridgeville Highway Seaford, Delaware." (Compl. ¶¶ 5, 6). Those allegations are an insufficient factual basis for diversity jurisdiction under 28 U.S.C. § 1332.

8, 2010); Royal Indem. Co. v. Admiral Ins. Co., No. 07-2048, 2007 U.S. Dist. LEXIS 85991, at *5 (D.N.J. Nov. 19, 2007).

## III. DISCUSSION

Plaintiff asserts that this Court has subject matter jurisdiction over this case based on ERSIA's jurisdictional provision, 29 U.S.C. § 1132(e), and the general federal-question jurisdiction statute, 28 U.S.C. § 1331. However, under either statute, "the existence of an 'ERISA-governed plan' is an essential precursor to federal jurisdiction." UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of Am., 998 F.2d 509, 510 (7th Cir. 1993). If Plaintiff's supplemental retirement benefits package does not qualify as an employee welfare benefits plan under ERISA, this Court may not have subject-matter jurisdiction over Plaintiff's claims. Id.; see Koval v. Wash. County Redevelopment Auth., 574 F.3d 238, 244 (3d Cir. Pa. 2009) (dismissing complaint for lack of subject-matter jurisdiction because the benefits plan at issue was exempt from ERISA).

ERISA defines an "employee welfare benefit" plan as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . .

29 U.S.C. § 1002(1). Interpreting that definition, the Supreme Court has held that "severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme." Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992) (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (U.S. 1987)). Thus,

5

"severance agreements that are properly characterized as simple contracts between an employee and employer . . . do not constitute plans under ERISA" even though they "often bind an employer to enroll, or to keep enrolled, an employee in a pension or welfare benefit plan." Cvelbar v. CBI Ill., 106 F.3d 1368, 1373 (7th Cir. 1997); see also Miller v. Taylor Insulation Co., 39 F.3d 755, 760-61 (7th Cir. 1994) (expressing skepticism that a promise by an employer to enroll an employee in a benefits plan constituted a separate ERISA plan). This is because an individualized contract for continued enrollment in a benefits plan likely will not "require the establishment and maintenance of a separate and ongoing administrative scheme."[2] Angst, 969 F.2d 1538.

In Angst, the Third Circuit considered whether ERISA governed a "buyout plan" to provide departing employees with a year of continued benefits under the employer's existing benefits plans. Angst, 969 F.2d at 1532. The Third Circuit held that "[b]ecause the continued disbursement of benefits . . . did not require the creation of a new administrative scheme and did not impose new administrative requirements on an existing administrative scheme, but rather simply required the continuation of an existing procedure, we agree . . . that the buyout plan did not constitute an ERISA plan." Id. at 1540 (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987)).

Here, Plaintiff alleges that Diamond's Board of Directors adopted a "plan" to pay for Plaintiff's continued enrollment in Diamond's employee health insurance plan. If Plaintiff's supplemental retirement benefits package was nothing more than a promise by Diamond to pay for her continued enrollment in Diamond's already existing employee healthcare plan, it may not

---

[2] This does not mean that ERISA never applies to single-employee plans. See Cvelbar, 106 F.3d1376. "[A]s long as the benefits program meets the other requirements of an ERISA plan – namely, an ongoing administrative scheme and reasonably ascertainable terms – the program does not fall outside the ambit of ERISA merely because it covers only a single employee." Id.

qualify as an ERISA plan. In that event, this Court would not have jurisdiction over Plaintiff's claims unless Plaintiff asserted an alternative basis for jurisdiction. Because the parties have not briefed this issue, and because the parties did not submit a copy of the alleged plan, the Court is without sufficient evidence upon which to determine whether ERISA governs the plan. Thus, the Court dismisses Defendant's pending motion to dismiss without prejudice and orders Plaintiff to show cause within thirty days why this Court has subject-matter jurisdiction to hear her claims.

## IV. CONCLUSION

For the reasons discussed above, the Court dismisses Defendant's motion to dismiss or, in the alternative, for summary judgment, and orders Plaintiff to show cause within thirty days from the date of the accompanying Order why this Court has subject-matter jurisdiction to hear her claims. An appropriate Order shall enter.

Dated: 6/24/2011                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge